IN THE MATTER OF THE TRANSFER INHERITANCE TAX IN THE ESTATE OF CHARLES A. WIMPFHEIMER, DECEASED.

ANNIE C. WIMPFHEIMER ET AL., EXECUTORS, ETC., PETITIONERS-PROSECUTORS, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, RESPONDENT-DEFENDANT.

ANNIE C. WIMPFHEIMER ET AL., EXECUTORS, ETC., PETITIONERS-DEFENDANTS, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, RESPONDENT-PROSECUTOR.

Argued May 6, 1941—Decided May 21, 1941.

Before Justices BODINE, PERSKIE and PORTER.

For the prosecutors, *McDermott, Enright & Carpenter* (*James D. Carpenter, Jr.*), (*Joseph M. Proshauer* and *Charles Looker*, of the New York bar).

For the State Tax Commissioner, *David T. Wilentz* and *William A. Moore*.

BODINE, J. The Prerogative Court modified transfer inheritance taxes made by the State Tax Commissioner. Both the estate and the Tax Commissioner secured *certiorari*. The cases by stipulation were consolidated.

Charles A. Wimpfheimer died November 26th, 1934, a resident of this state. On January 2d and on December 31st, 1923, he made outright gifts of stock in two concerns, in which he was largely interested, to his wife, his two sons and a daughter. The daughter, then being a minor, her stocks were held in trust. The gifts so made represented about 25% of testator's then worth.

The proofs indicate that at the time the gifts were made, Mr. Wimpfheimer was an exceedingly virile, active and energetic man, able to spend long hours in his office, interested in charities and devoted to his family. His sons were in business with him. His income was at that time very large. Under federal income tax laws, surtax rates make undesirable too large an income. The sons were ambitious to succeed and no doubt required larger incomes. The older one was married and the younger was contemplating the step. Their father wanted them to remain in business with him and be independent of gifts. The plan failed because dividends were not earned. In fact, the businesses in which the deceased was interested became less prosperous until at his death his estate was worth $1,121,535, and the gifts which he had made more than eleven years before were worth but $848,548.

The State Tax Commissioner held that the gifts were made in contemplation of death. He valued them at $2,960,377, the wife's and sons' as of 1923 and the daughter's as of 1927. It is to be noted that the only basis for the 1927 figure was that the trust was terminated in that year. But since all gifts were made at the same time the same value should apply to all. It has been noted that the net value of decedent's estate was $1,121,535. The State Tax Commissioner added to this $2,960,377 representing gifts worth at decedent's death, $848,548, and assessed a tax for $224,000. If the gifts said to have been made in contemplation of death had been valued as of the time of testator's death the tax would have been $63,000.

When is a gift made in contemplation of death? These gifts were made long before the two year period before death; hence, the Commissioner had the burden of establishing the testator's motive to evade the payment of transfer taxes. *Moore* v. *Martin,* 125 *N. J. L.* 189. Was the contemplation of death the impelling cause of the transfer? *Perry* v. *Martin,* 125 *Id.* 46; *United States* v. *Wells,* 283 *U. S.* 102. We think not. Because men usually devise their property to their wife and children is no reason that gifts made to them in the same proportion should be regarded as testamentary.

The proofs show three valid reasons for the gifts: (1) Reduction of future income taxes; (2) a desire to secure the independence of his family; (3) a desire to stimulate the interest of his sons in the business. The proofs showed the deceased in good health and sound body at the time the gifts were made.

Testator was accustomed to making large gifts. He had given in his lifetime more than a million and a half dollars to charity. In a few years he gave over $300,000 to the Monmouth Memorial Hospital. Although contributing generously to many charities established in this state, he also contributed a substantial sum of money to the Presbyterian Hospital, the French Hospital and Vassar College. Even when his income had suffered serious reductions and his business enterprises were not prospering, his charitable contributions were large and generous.

"The bare fact that the deceased made to his son a substantial gift of property that would in all likelihood pass to him upon the father's death, if the gift had not been effected, does not render it one made in contemplation of death within the intendment of the statute. If that were so, a gift by a parent to his child of a material part of his estate, no matter what and how compelling the circumstances, would *ipso facto* be taxable as one made in contemplation of death." *Moore* v. *Martin, supra.* See, also, *MacGregor* v. *Martin,* 126 *N. J. L.* 492.

The United States Government did not regard the gifts as made in contemplation of death and the proofs do not sustain the State Tax Commissioner.

Clearly, there was no transfer in 1923 in contemplation of death. But if we assume that there was the method of assessment used was archaic and confiscatory. If we regard the transfer as not made, then the subject of the gift must be treated as though in the testator's estate as of the time of his death. Testator's death affects the transfer, and property passing is valued as of that time. *Hartford* v. *Martin,* 122 *N. J. Eq.* 489; 120 *N. J. L.* 564; 122 *Id.* 283. The purpose of voiding transfers in contemplation of death is to defeat evasion of inheritance taxes. If the transfer *inter vivos* does not succeed, the testator's estate is enlarged at the time of his death for tax purposes to the extent of the then value of the transfer.

If it be assumed that a certain testator had been possessed in 1929 of 400 shares of a certain bank stock then currently selling for $500 a share and had transferred 100 shares thereof to a son and subsequently the gift should be held to be in contemplation of death, if at the time of the death the only assets then in the estate were the remaining 300 shares and they were selling for $20 a share, the estate would be worth $6,000 but liable for taxes as though it was worth $56,000. The taxes would not be on a transfer but would result in a probable confiscation of the estate.

The tax is a transfer tax at death. When there is a life estate the tax upon the remainder awaits the time of beneficial enjoyment, with this exception all taxes are due upon the death of the testator. There seems no legislative purpose to subject the estate to the payment of taxes at the date of *inter vivos* transfer. *Re Bottomley's Estate,* 92 *N. J. Eq.* 202.

The New Jersey statute is silent as to the time of imposing a tax upon *inter vivos* transfers subsequently held to be in contemplation of death. A specific tax provision has been adopted in some states. Our legislature never has adopted such a provision. Logic and reason justify its silence.

The exclusion from the estate of the worthless notes of the United States Finishing Company was proper.

The decree of the Prerogative Court is set aside and the tax assessed is vacated in so far as it is inconsistent with this opinion.